# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Rosendo C.,**
**Petitioner Below, Petitioner**

**vs)  No. 16-0049** (Gilmer County 14-C-21)

**David Ballard, Warden,**
**Mount Olive Correctional Center,**
**Respondent Below, Respondent**

**FILED**

**March 13, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Rosendo C., by counsel Kevin W. Hugart, appeals the Circuit Court of Gilmer County's December 28, 2015, order that denied his petition for writ of habeas corpus.[1] The State of West Virginia, by counsel Gordon L. Mowen II, filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his request for habeas relief because (1) his trial counsel was constitutionally ineffective; (2) the underlying conviction was obtained through an involuntary guilty plea; (3) the prosecutor had a conflict of interest; and (4) the sentence imposed constituted cruel and unusual punishment.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2007, a Gilmer County grand jury indicted petitioner on sixteen counts of sexual abuse by a parent, guardian, or custodian, in violation of West Virginia Code § 61-8D-5(a); sixteen counts of first-degree sexual abuse, in violation of West Virginia Code § 61-8B-7(a)(1); two counts of child abuse resulting in injury, in violation of West Virginia Code § 61-8D-3(b); and one count of wanton endangerment, in violation of West Virginia Code § 61-7-12. During the proceedings, petitioner's counsel requested that petitioner undergo a psychiatric evaluation and the circuit court granted said request. The report from that evaluation states that petitioner "had no mental disease or defect that would have prevented him from appreciating the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

wrongfulness of his acts, [or] would have prevented him from conforming his acts to the requirements of the law." The evaluator stated that petitioner was competent to stand trial, had an "adequate appreciation of the proceedings against him," and had the capacity to assist his attorney.

Ultimately, in March of 2008, petitioner pled guilty to five counts of sexual abuse by a parent, guardian, or custodian, in violation of West Virginia Code § 61-8D-5(a). In so doing, petitioner admitted to having sexual intercourse with his minor step-daughter. He was sentenced on the same day to terms of incarceration of not less than ten nor more than twenty years on each of the five counts of sexual abuse by a parent, guardian, or custodian; the sentences were ordered to run consecutively.

In September of 2008, after his conviction and sentencing, petitioner filed a direct appeal with this Court, and by order entered on December 9, 2008, this Court refused petitioner's petition for appeal. This Court refused petitioner's subsequent petition for rehearing.

In August of 2014, petitioner filed a petition for habeas corpus relief with the circuit court alleging (1) ineffective assistance of trial counsel; (2) that the underlying conviction was obtained through an involuntary guilty plea; (3) that the prosecutor had a conflict of interest; and (4) that the sentence imposed constituted cruel and unusual punishment. In October of 2015, the circuit court held an omnibus evidentiary hearing, wherein both petitioner and his defense counsel testified. Counsel testified that he met with petitioner approximately ten to fifteen times during the proceedings. Counsel also testified that he explained to petitioner that he had the right to a jury trial, the right to testify, the right to remain silent, the right to confront his accusers, and the right to call witnesses. Counsel further testified that he ultimately recommended that petitioner accept a plea given the indictment, petitioner's admission that he and his wife wanted children and agreed that he would have sexual intercourse with his step-daughter to produce children, and the paternity test establishing that he was, in fact, the father of his step-daughter's children. As to petitioner's competency, counsel testified that petitioner appeared coherent during their meetings and the proceedings. Counsel noted that petitioner was incarcerated during the proceedings leading to his conclusion that petitioner was not under the influence of any illegal substances.

Petitioner testified that his counsel "never explained any of his constitutional rights" and that his counsel only met with him approximately three times. Petitioner also testified that he did not know "he was waiving so many rights" by entering a guilty plea, that his counsel appeared to be "working for the State," and that his counsel showed no interest in defending him. Petitioner further testified that he felt that the circuit court "threw the book at him" and that he was "stoned" at both the plea and sentencing hearing so he did not understand the proceedings, making his plea involuntary. Following the omnibus evidentiary hearing, the circuit court entered an order on December 28, 2015, denying petitioner's petition for writ of habeas corpus. This appeal followed.

This Court reviews a circuit court order denying habeas corpus relief under the following standard:

2

"In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009).

On appeal, petitioner argues that the circuit court erred in denying habeas relief based on his claim that his trial counsel was constitutionally ineffective, the underlying conviction was obtained through an involuntary guilty plea, the prosecutor had a conflict of interest, and the sentence imposed constituted cruel and unusual punishment. We do not agree. Our review of the record supports the circuit court's decision to deny petitioner post-conviction habeas corpus relief based on the errors alleged in this appeal, which were also argued below. According to the record on appeal, petitioner's own testimony established that he was not addicted to drugs, underwent a psychiatric evaluation to determine competency, and met with his counsel numerous times throughout the proceedings. Indeed, the circuit court's order includes well-reasoned findings and conclusions as to the assignments of error raised on appeal. Given our conclusion that the circuit court's order and the record before us reflect no clear error or abuse of discretion, we hereby adopt and incorporate the circuit court's findings and conclusions as they relate to petitioner's assignments of error raised herein and direct the Clerk to attach a copy of the circuit court's December 28, 2015, "Final Order On Habeas Corpus Petition" to this memorandum decision.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** March 13, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

IN THE CIRCUIT COURT OF GILMER COUNTY, WEST VIRGINIA

ROSENDO C

                   Petitioner,

vs.

                                 Case Number 14-C-21

DAVID BALLARD, Warden of
Mount Olive Correctional Complex,
                   Respondent.

## FINAL ORDER ON HABEAS CORPUS PETITION

This is a petition for writ of habeas corpus pursuant to W.Va. Code § 53-4A-1, *et seq.* wherein the petitioner seeks post-conviction relief with respect to his conviction in the Circuit Court of Gilmer County, West Virginia, to wit: 07-F-14. An omnibus hearing was held on said petition on the 7th day of October, 2015, where there appeared the petitioner in person and with habeas counsel, Kevin Hughart and the respondent by and through Gerald Hough, Prosecuting Attorney for Gilmer County.

The petitioner called witnesses who were subject to cross examination, thereafter the petitioner did rest. The respondent called no witnesses and did rest. The Court took the matter under advisement and instructed the parties this written decision would follow. Having afforded a plenary review of the record herein, the testimony adduced and the applicable law, the Court, for reasons set forth more fully below, does hereby deny all grounds alleged by the petitioner for post-conviction habeas corpus relief.

## FINDINGS OF FACT

1. This is a petition for writ of habeas corpus pursuant to W.Va. Code § 53-4A-1, *et seq.* filed by the petitioner through his habeas counsel Bryan Hinkle on June 17, 2015, in the Circuit Court of Gilmer County, West Virginia, wherein the petitioner alleges multiple assignments of error.

2. The Court takes judicial of all proceedings in criminal case, to wit: 07-F-14 wherein the petitioner plead guilty on March 12, 2008, to five (5) counts of the felonious offense of sexual abuse by parent, guardian, or custodian in violation of W.Va. Code § 61-8D-5(a) (2002)[1]. Said acts occurred in Gilmer County, West Virginia on or about July 2002.

3. The petitioner was subsequently sentenced by the Circuit Court of Gilmer County on May 12, 2008, to a term of not less than ten (10) no more than twenty (20) years on each of the respective five (5) counts, with said sentences to run consecutively. Therefore, the total sentence imposed by the Court was not less than fifty (50) no more than one hundred (100) years in the penitentiary.

4. Brian Bailey was the petitioner's court appointed counsel in the underlying criminal case and was present with the petitioner during entry of the guilty pleas and during sentencing.

5. The transcript of the plea hearing in the underlying criminal case reflects that the Court advised the petitioner of his rights in accordance with *Call v. McKenzie*, 159 W.Va. 191, 220 S.E.2d 665, (1975). Further, the transcript reflects the petitioner acknowledged he understood those rights and knowingly and voluntarily waived the same, as well as freely and voluntarily entered his pleas of guilty.

6. Subsequent to sentencing, petitioner, through counsel, Brian Bailey appealed said disposition to the West Virginia Supreme Court of Appeals on September 22, 2008. By Order dated December 9, 2008, the Supreme Court refused the petition for appeal.

---

[1] The offenses for which the petitioner stands convicted occurred in July 2002. At the time of the commission of these acts, W.Va. Code §61-8D-5 contained the heading "Sexual Abuse by a Parent, Guardian, or Custodian." The statute was subsequently amended by the West Virginia Legislature in 2005 to "Sexual Abuse by a Parent, Guardian, Custodian, or Person in a Position of Trust."

7. The petitioner filed this instant petition on the 11th day of August, 2014. The petition sets forth five (5) grounds for relief: (1) ineffective assistance of counsel; (2) sentence imposed amounts to cruel and unusual punishment; (3) involuntary guilty plea; (4) trial court lacked jurisdiction; and (5) petitioner believes prosecutor had a conflict. Further, Kevin Hughart was appointed as habeas counsel for the petitioner.

### Omnibus Hearing

8. The record reflects that a *Losh v. McKenzize*[2] checklist was executed by the petitioner and his habeas counsel, in addition to being filed and made part of the record in this case. Further, petitioner's counsel, Mr. Hughart inquired of his client whether he understood the nature of the omnibus proceedings and that any grounds not raised will be deemed forever waived. The petitioner acknowledged he understood and knowingly and voluntarily waived any grounds not asserted during the omnibus hearing.

9. In support of his petition, the petitioner called his counsel in the underlying criminal case, Brian Bailey as a witness and the petitioner, himself did testify on his own behalf. Both witnesses were subject to cross-examination. Thereafter, the petitioner did rest. The respondent called no witnesses and so rested.

### Omnibus Hearing Testimony of Brian Bailey

10. Mr. Bailey testified that he recalled meeting with the petitioner and going over the underlying indictment and the respective elements of the multiple crimes charged. Further, counsel stated that he met with the petitioner approximately a total of five (5) times during the case. Mr. Bailey also represented the petitioner in the companion abuse and neglect case, to wit:

---

[2] See *Losh v. McKenzie* 166 W.Va. 762, 277 S.E.2d 606 (1981), wherein the West Virginia Supreme Court of Appeals compiled a comprehensive list of grounds, "which might be considered sufficient" for habeas corpus relief.

07-JA-8 to 12, which related to the underlying criminal charges. Mr. Bailey indicated he met with Mr. C̶ numerous times in regard to the abuse and neglect case and that those discussions also pertained at times to the subject criminal case.

11. Counsel recalls petitioning the court for both a psychological and psychiatric evaluation of his client and those examinations were completed. Further, Mr. Bailey opined that his client always appeared coherent during their meetings.

    a. The Court takes judicial notice that a "Motion for Mental Examination" was filed on January 10, 2008, and subsequent thereto the Court did order the same. A forensic psychological and psychiatric evaluation was completed by Charleston Psychiatric Group, Inc. and a report was prepared and submitted to the Court and counsel for the parties. Further, by Order dated February 14, 2008, the Court having reviewed report deemed the petitioner competent to stand trial.

12. Mr. Bailey stated that he did not file a bill of particulars. However, counsel testified that he explained to the petitioner his various rights, including: the to remain silent, right to a trial by jury, right to testify on his own behalf, right to confront his accusers and his right to call witnesses.

13. Mr. Bailey did not recall whether he addressed with the petitioner a substance abuse history prior to his guilty plea; however, Mr. Bailey does recall the Court inquiring of the same during the plea and the petitioner stated he was neither addicted to controlled substances nor suffering from withdrawal.

14. Mr. Bailey further stated that the petitioner never made bond in the underlying case

and at all times has remained incarcerated since his initial arrest and therefore, he had no reason to believe the petitioner was ever under the influence of any controlled substance(s).

15. Mr. Bailey stated he recalled the possible conflict with respect to the petitioner having previously rented from the prosecuting attorney, Mr. Hough prior to the events that led to his arrest; however, to his recollection, his client did not object to the conflict.

16. Additionally, Mr. Bailey stated that during their meetings, he found the petitioner reluctant to admit the incidents for which he was convicted occurred. He was further of the understanding that the incidents began when the petitioner was residing with his family in the State of New York and they remained ongoing through their move to Gilmer County, West Virginia. However, Mr. Bailey further testified that both he and the petitioner believed the plea was in the petitioner's best interest most notably after receiving the DNA results which indicated the petitioner was the father of his underage stepdaughter's child.

### Omnibus Hearing Testimony of Rosendo C

17. Mr. C          testified he is currently serving a sentence in the underlying criminal case of not less than (fifty) nor more than one hundred (100) years in the penitentiary. Petitioner further acknowledged he understood the nature of the omnibus hearing, that his mind was presently free and clear and that he was not under the influence of any drugs and/or alcohol.

18. The petitioner sets forth five (5) grounds for relief: (1) ineffective assistance of counsel; (2) sentence imposed amounts to cruel and unusual punishment; (3) involuntary guilty plea; (4) trial court lacked jurisdiction; and (5) petitioner believes prosecutor had a conflict.

### Ground One: Ineffective Assistance of Counsel

19. Petitioner testified that Mr. Bailey never explained any of his constitutional rights,

nor were the charges he faced explained to him and that the two met to discuss the case approximately three (3) times.

20. Petitioner further stated that he did not know he was waiving so many rights by entering a guilty plea and had Mr. Bailey duly advised him of those rights he would have rejected the plea agreement and went to trial.

21. Petitioner further alleges that Mr. Bailey appeared to be "working for the State" during his representation of the petitioner and that Mr. Bailey had no interest in helping defend him.

## Ground Two: Sentence Imposed Amounts to Cruel and Unusual Punishment

22. The petitioner testified that he was aware that he could be sentence to a term not less than fifty (50) but not more than one hundred (100) years bases on the offenses plead to in the plea agreement, however, he felt the Court "threw the book at him" at sentencing.

23. He further alleges that had Mr. Bailey called witnesses on his behalf at sentencing, the Court would have found him deserving of a lighter sentence. Further, the petitioner believes the fact his sentences were ordered to run consecutively instead of concurrently constitutes cruel and unusual punishment.

## Ground Three: Involuntary Guilty Plea

24. Petitioner testified that he was "stoned" and "too doped up" at the time of both his plea hearing and at sentencing to understand what was going on and therefore, his actions were not voluntarily.

25. He further stated that he informed Mr. Bailey of the list of medications he taking at the time of his plea and sentencing and how they affected him but Mr. Bailey took no action to advise the Court of the same.

26. Petitioner testified that at the time of his underlying criminal case he was on remron, buspar, zoloft, oxycodone, neurontin, as well as numerous other medications and therefore was not competent during any of the proceedings.

27. Petitioner also claims that he is just now currently working on obtaining his GED and therefore lacked the ability to comprehend and understand the nature of the charges against him or any of the court proceedings in which he partook. Therefore, it is his position his actions were involuntary.

28. Petitioner recalls going to Charleston Psychiatric Group for his evaluation and remembers being asked questions but claims he was "out of it" because of all of the medications. Further, he claims a list of all his medications should be on file at the Central Regional Jail, where he was housed throughout the entire duration of his criminal case.[3]

29. Petitioner testified that he remembered his pre-sentence investigation interview where he told the probation officer that his wife wanted more children and that he, his wife, and her underage daughter agreed that the daughter would have the children for his wife and that each of them were "okay" with the arrangement. However, despite this recollection, petitioner maintains he was too medicated to remember anything about his case, his plea, sentencing, or any of his meetings with his attorney.

30. The Court takes judicial notice that the petitioner was arrested on or about October 2, 2007, and at no time was released on bond during the pendency of the underlying criminal case.

### Ground Four: Trial Court Lacked Jurisdiction

31. Petitioner argues that the trial court lacked jurisdiction over the acts for which he is convicted because they occurred in the State of New York not Gilmer County, West Virginia.

---

[3] The neither Court notes that no such records are within the underlying criminal case record, 07-F-14, nor are they part of the record in this current proceeding and no such records were presented at the omnibus hearing.

32. Petitioner admits that at the time he entered his guilty plea he admitted that the acts did occur in Gilmer County, West Virginia, but now argues he was under the influence of controlled substances and other medications, as well as lacked the requisite competence to fully understand the nature of the trial court's inquiry. Therefore, he opines that his actions surrounding his plea in this case should be deemed involuntary.

### Ground Five: Petitioner Believes the Prosecutor had a Conflict

33. Mr. C believes that Gerald Hough should have been recused from representing the State of West Virginia in his criminal case because the petitioner at one time had previously rented from and did odd jobs for Mr. Hough.

34. The Court notes, however, that the underlying criminal record is devoid of any written motion by the petitioner to recuse Gerald Hough from the case.

35. The petitioner acknowledged that he has remained incarcerated since his original arrest on the these charges for which he stands convicted.

### DISCUSSION

As referenced above, the petitioner sets forth five separate grounds for habeas corpus relief: (1) ineffective assistance of counsel; (2) sentence imposed amounts to cruel and unusual punishment; (3) involuntary guilty plea; (4) trial court lacked jurisdiction; and (5) petitioner believes prosecutor had a conflict. The Court having thoroughly reviewed the evidence of record and applicable law does deny each of the aforementioned grounds. However, in order, to succinctly expound upon its ruling with respect to each of the grounds raised herein, the Court will discuss each ground separately below.

## Ground One: Ineffective Assistance of Counsel

As his first basis for relief, the petitioner argues that Brian Bailey, his counsel in the underlying criminal matter, ineffectively represented him throughout the entirety of the case. In support of this argument, petitioner contends that Mr. Bailey failed to advise him of his constitutional rights, ignored what the petitioner considers to be have been an obvious substance abuse problem that clearly affected his ability to comprehend any of the proceedings, failed to meet with him to prepare a proper defense, and failed to call witnesses on his behalf at sentencing. It is the petitioner's view that this litany of errors on the part of Mr. Bailey are sufficient enough to survive analysis under the two-prong test set forth by the United States Supreme Court in *Strickland v. Washington*,[4] and therefore warrant habeas corpus relief.

Claims of ineffective assistance of counsel are governed by the now axiomatic two-pronged standard set forth by our nation's Supreme Court in *Strickland*. Pointing to that holding the West Virginia Supreme Court of Appeals espoused in syllabus point five of *State v. Miller*[5] that the burden of proof is on the party alleging counsel was ineffective to show that (1) counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). Further, as our highest state court explained in syllabus point five of *Daniel v. Legursky*, 195 W.Va. 314, 465 S.E.2d 416 (1995), a court need not addressed both prongs of the ineffective assistance standard set forth in *Strickland* and *Miller* but may dispose of such a claim based solely on petitioner's failure to satisfy either prong of the test. The Court will now apply those aforesaid principles to the present case.

---

[4] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984); *see also* Syl. Pt. 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

[5] *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

As delineated above, with respect to the first *Strickland* prong a court is charged with determining whether counsel's performance was deficient under an objective standard of reasonableness. To that end, the *Miller* Court reasoned that

> [I]n reviewing counsel's performance, courts must apply an objective standard and determine whether, *in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or a second-guessing of trial counsel's strategic decisions.* Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

Syl. Pt. 6, *Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). (emphasis added). Further, the breadth of this prong was also discussed in *Strickland* wherein our highest tribunal opined that a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 694, S.Ct. at 2068, 80 L.Ed.2d at 698. As previously eluded to, the petitioner argues there are multiple errors to be assigned to Mr. Bailey's representation of him in the underlying criminal matter and that those errors are sufficient to satisfy the *Strickland* standard.

First, the petitioner contends that counsel failed to advise him of his constitutional rights with respect to the criminal process and nature of charges against him, however, the Court finds this unavailing because the record wholly contradicts such an assertion. In support of this finding, the Court points to the transcript of the plea hearing wherein the Court, the petitioner with Mr. Bailey engaged in the following colloquy, in part:

> THE COURT: How many times have you met with Mr. Bailey?
> THE DEFENDANT: Five times.
> THE COURT: Have you had adequate opportunity to discuss with him the facts and circumstances surrounding the allegations in this case and any possible defense you have in regards to this?
> THE DEFENDANT: (Shook head.) No.
> THE COURT: Have you had adequate opportunity to discuss it with him? Have you had adequate opportunity to discuss it with him?

THE DEFENDANT: (Nodded.) Yeah.

THE COURT: Okay. Now, Mr. Bailey also represents you in the companion abuse and neglect case, does he not?

THE DEFENDANT: (Nodded.) Yeah.

THE COURT: And you've consulted with him and- -and this offense arises out of the those same facts; isn't that true?

THE DEFENDANT: (Nodded.) Yeah.

THE COURT: And you've had numerous times to consult with him, not only as to this cause but as to the companion abuse and neglect case; is that true?

THE DEFENDANT: (Nodded.) Yeah.

THE COURT: And you've had enough time to do that with him; is that correct?

THE DEFENDANT: Yeah.

(Plea Hearing Transcript pp. 15-16).
****

THE COURT: Mr. C       do you have any history of mental illness?

THE DEFENDANT: A little bit. Not a lot.

THE COURT: What - -

THE DEFENDANT: Uh huh.

THE COURT: What is the history?

THE DEFENDANT: I can't read and write that much

THE COURT: That's your only problem?

(WHEREUPON, Mr. Bailey and the defendant conferred, after which the following proceedings were had:)

THE DEFENDANT: Yeah.

THE COURT: Do you understand what's going on here today?

THE DEFENDANT: Yeah. Yeah.

THE COURT: Are you addicted to alcohol?

THE DEFENDANT: No.

THE COURT: Are you addicted to drugs?

THE DEFENDANT: No.

THE COURT: Do you have any problems with drugs or alcohol?

THE DEFENDANT: No.

THE COURT: Do you understand that this Court, based upon a motion by your lawyer ordered you to go to a psychological eval- -- psychiatric evaluation to determine your competency to stand trial? You understand that?

THE DEFENDANT: Yeah.

THE COURT: You understand this Court received the report from Charleston Psychiatric and that the opinion of the psychologist and/or – and psychiatrist, that you were able to stand trial? Do you understand that?

THE DEFENDANT: Yeah.

THE COURT: And you understand that you are giving up your right to further challenge that issue at this stage? You understand that?

THE DEFENDANT: Yeah.

THE COURT: You've discussed this plea agreement with your attorney; is that correct?

THE DEFENDANT: (Nodded.) Yes.

\*\*\*\*

THE COURT: Do you want the opportunity to talk with your lawyer outside the Court's presence about anything that I've explained to you here this morning before I call upon you to enter your plea?

THE DEFENDANT: (Shook head.) No.

(Plea Hearing Transcript p. 29).

\*\*\*\*

THE COURT: All right. Mr. Bailey, have you had the opportunity to investigate this case and confer with your client and to go discuss discovery or to go over discovery by the State of West Virginia? Do you know any meritorious defenses that your client has if this case proceeds to trial?

MR. BAILEY: No, your Honor. Paternity testing confirmed that he was father of these children, which essentially that's the position of – I think we're required to take the plea at this point.

THE COURT: Do you believe the plea agreement is in your client's best interest?

MR. BAILEY: (Nodded.) I do, your Honor.

THE COURT: Mr. C᷎            ᷎, are you satisfied with the manner in which Mr. Bailey represented you?

THE DEFENDANT: Yeah.

THE COURT: Do you feel he failed to do anything he should have done?

THE DEFENDANT: No.

THE COURT: Do you have any complaints at all about the manner in which he's represented you?

THE DEFENDANT: (Nodded.) Yeah.

THE COURT: Yes, you have no complaints?

THE DEFENDANT: (Shook head.) No.

(Plea Hearing Transcript pp. 33-34).

\*\*\*\*

THE COURT: After due consideration of the facts and circumstances developed by the responses and statements made by the defendant and that statements made by the attorney for the defendant and the attorney for the State, I would find as follows:

The defendant and his attorney received a copy of the indictment in this case;

The defendant understands that nature and meaning of the charges against him in the indictment;

The defendant has an attorney who is competent in criminal matters;

The defendant is totally satisfied with the representation and advices that he has received from his attorney;

The defendant has consulted with and been advised by his attorney with respect to his constitutional rights and his waiver of those rights ...

(Plea Hearing Transcript p. 35).

\*\*\*\*

The Court finds that this extensive colloquy establishes the petitioner was advised of his constitutional rights, given the opportunity to further discuss these rights with counsel, and the petitioner further indicated on the record, multiple times that he understood his rights and the nature of the charges against him and his ultimate waiver of such rights. Additionally, the Court finds that the petitioner stated he was not under the influence of drugs or alcohol, nor was he suffering from withdrawal of the same and therefore, the petitioner was decidedly coherent during the plea taking process as he actively engaged in discussions with the Court in an open, concise and frank manner. The record further reflects that by the petitioner's acknowledgment he had sufficient time to meet with and discuss the facts and circumstances of his case, as well as that he understood his rights and the significance of the waiver of those rights. Of further significance, the Court, on the record, inquired of the petitioner if he had any complaints about Mr. Bailey's representation of him, to which the petitioner replied he had none and that Mr. Bailey did not fail to do anything that the petitioner thought he should have done.

Furthermore, the record in the underlying criminal record is replete with evidence that Mr. Bailey not only zealously represented his client, but that the petitioner was advised of his constitutional rights. As evidenced by the record, Mr. Bailey was present with the petitioner at all critical stages of this case, most notably: arraignment, the plea hearing and sentencing. Mr. Bailey also timely filed an appeal on the petitioner's behalf to the West Virginia Supreme Court of Appeals challenging the sentencing imposed by the trial court. Furthermore, cognizant of his

client's best interest and constitutional rights Mr. Bailey petitioned this Court to order he undergo psychiatric and psychological evaluations and the same was so ordered and completed.

Second, the petitioner attempts to bolster his ineffective assistance claim by arguing that throughout the pendency of his case, he suffered from a serious controlled substance addiction and was that this addiction rendered him unable to cognitively participate and understand his communications with Mr. Bailey as well as with the Court in his plea hearing. Having reviewed the record in this case, the Court is unpersuaded by this argument. First, as illustrated above, the petitioner coherently engaged in an extensive colloquy with the Court during his entry of his plea. Also, the Court did inquire if the petitioner was addicted to or suffering withdrawal from drugs or alcohol, to which the petitioner indicated he was not and that his mind was free and clear. Of additional significance, the petitioner acknowledged that he never made bond in his criminal case and has remained incarcerated since his initial arrest in the matter. Considering the petitioner was incarcerated on or about September 27, 2007, and entered a plea on or about March 12, 2008, in addition to the petitioner's cognitive and coherent nature and demeanor on day of said plea, the Court finds that the petitioner was not under the influence of drugs and/or alcohol, nor was he suffering from withdrawal of the same. Further, Mr. Bailey indicated that the petitioner never indicated a substance abuse history, nor did he at any time during his representation of the petitioner exhibit signs or symptoms indicative of an apparent addiction or withdrawal. As such, based on the totality of the circumstances, the Court finds the petitioner's argument that his counsel ignored his obvious substance abuse problem meritless; and therefore, denies the petitioner's claim on those grounds as he has failed to carry his burden of proof.

As a third argument, the petitioner claims that Mr. Bailey failed to effectively meet with him in regards to his case and testified they only met three (3) times. The Court finds this

assertion to be contradicted by the underlying record. As referenced above, the transcript from the plea hearing indicates that the petitioner acknowledged that while he met with Mr. Bailey on five (5) occasions with regard to his criminal case, he further acknowledged that he met with Mr. Bailey numerous additional times in the companion abuse and neglect proceedings and had ample discussions regarding the facts and circumstances of his criminal case then as well. The plea transcript further illustrates that the petitioner had no complaints about Mr. Bailey's representation and that he had ample time to consult with him regarding his criminal case. While the petitioner argues these statements were in error due to being under the influence or "stoned" during the plea hearing, the Court, as explained above, found that argument without merit. Moreover, with respect to the alleged deficiency that Mr. Bailey failed to meet with his client, the Court finds this contention to be clearly unsupported by the record. The record indicates that the petitioner and his counsel met on a multitude of occasions with respect to the facts and circumstances of this case; that the petitioner stated he was satisfied with the nature of Mr. Bailey's representation, that he understood his rights and the waiver of those rights, and that he had sufficient time to discuss the nature of his criminal case with Mr. Bailey and no further time or discussion was needed. Based on the evidence and these representations by the petitioner, the Court is of the opinion that the petitioner has failed to establish that Mr. Bailey acted in a manner outside that of a reasonable criminal defense attorney under the circumstances.

Lastly, the petitioner opines that Mr. Bailey was ineffective because he failed to call witnesses on the petitioner's behalf at the time of sentencing. As previously stated, the *Miller* Court framed a court's inquiry of ineffective assistance claims with respect to counsel's performance as follows: courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of

professionally competent assistance *while at the same time refraining from engaging in hindsight or a second-guessing of trial counsel's strategic decisions. Miller, supra.* at Syl. Pt. 6. (emphasis added). In this regard, the petitioner failed at the omnibus hearing to identify the witness he wanted Mr. Bailey to call at sentencing and furthermore, even if the petitioner had identified said witnesses, the failure to call them at sentencing is not ineffective assistance of counsel but merely a tactical and strategic decision on the part of Mr. Bailey. Because such a decision rests in the strategic and tactical decision making facet of Mr. Bailey's representation, this Court's inquiry, as explained in *Miller,* is not one of hind-sight or second-guessing but an objective standard of reasonableness; and therefore, to make speculation and conjecture regarding what these witnesses may or may not have testified to and is outside of the purview of the instant inquiry. Likewise, because this again was a matter of strategic decision, not of ineffective assistance and because it would be error for this Court to hypothesize on the nature of the alleged testimony that would have been given, the Court must also find that the petitioner still cannot overcome the second prong of *Strickland/Miller* and show a prejudice or reasonable probability that the result of his sentencing would have been different.

With respect to each of these alleged errors, the Court, for the reason set forth above, finds that no individual or collective alleged action or inaction on the part of Mr. Bailey, amount(s) to a deficiency that could be found to necessarily fall below an objective standard of reasonableness. To put it another way, none of the supporting factors posited by the petitioner establish a scenario wherein Mr. Bailey's actions would be deemed not to be what a reasonable criminal defense attorney would do under same or similar circumstances. As such, the petitioner's request for relief on this basis is denied as a matter of law.

## Ground Two: Sentence Imposed Amounted to Cruel and Unusual Punishment

The next argument raised by the petitioner is that the not less than fifty (50) nor more than one hundred (100) years sentence imposed by the Court amounts to cruel and unusual punishment, violating his Eighth Amendment rights under the United States Constitution and Article III, Section 5 of the West Virginia Constitution. Likewise, the petitioner also alleges the fact the Court ordered those sentences to run consecutively instead of concurrently are further indicia of cruel and unusual punishment. Having reviewed the reviewed the record and applicable law the Court is of the opinion that the sentence imposed by the Court is within the statutory guidelines and therefore does not amount to cruel and unusual punishment under the United States or West Virginia Constitutions. Likewise, the Court finds that the consecutive imposition of said sentences was well within the broad discretion afforded the trial courts by state law. Thus, as explained below, the petitioner's claims for relief in this respect must be denied.

With respect to sentences imposed and arguments regarding cruel and unusual punishment the West Virginia Supreme Court of Appeals has recognized that Article III, Section 5 of the West Virginia Constitution has an express statement of the proportionality principle: "penalties shall be proportionate to the character and degree of the offense." Syl. Pt. 8, in part, *State v. Vance,* 164 W.Va. 216, 262 S.E.2d 423 (1980). However, our state's highest court has further stated that the proportionality clause applies to "sentences where there is either no fixed maximum set by statute or whether there is a life recidivist sentence" Syl. Pt. 3, in part, *State v. Booth,* 224 W.Va. 307, 685 S.E.2d 701 (2009). Moreover, "sentences imposed by the trial court, if within statutory limits and if not based on some impermissible factor, are not subject to

appellate review." Syl. Pt. 5, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982). With these standards in mind the Court will proceed to the petitioner's respective argument.

From the outset, the Court notes that the petitioner plead guilty to five (5) counts of Sexual Abuse by a Parent, Guardian, or Custodian pursuant to W.Va. Code 61-8D-5(a) (2002).[6] With respect to penalty, this code provision provides in relevant part, "*... as a result of such conduct, then such parent, guardian or custodian shall be guilty of a felony and, upon conviction thereof, shall be imprisoned in the penitentiary not less than ten nor more than twenty years, or fined not less than five hundred nor more than five thousand dollars and imprisoned in the penitentiary not less than ten years nor more than twenty years.*" Subsequent to his conviction the petitioner was sentenced by this Court on May 12, 2008, to not less than ten nor more than twenty years in the penitentiary on each of the five counts referenced above for a total sentence of not less than fifty nor more than one hundred years, and the Court further ordered all of those sentences shall run consecutively. (See Sentencing Hearing Transcript pp 8 to 11). In this instant petition, the petitioner claims his total effective sentence of fifty to one hundred years in the penitentiary and the consecutive nature in which each of the five sentences were imposed constitutes cruel and unusual punishment.

The Court finds that the record reflects, and the petitioner also testified during the omnibus hearing, that he was fully aware and cognizant at the time of his plea that the possible penalty for each said crime was not less than ten nor more than twenty years in the penitentiary, and further that the Court could ultimately sentence him to the not less than fifty nor more than one hundred years, the maximum sentence allowed by law. (See Plea Hearing Transcript p. 37). Further, the petitioner acknowledged he understood that the Court could, if it deemed it appropriate, run each of those five sentences consecutively. (See Plea Hearing Transcript pp. 7-

---

[6] See fn. 1, supra.

15). Based on the record, the petitioner also had adequate time to confer with his counsel, Mr. Bailey, about the plea offer and the respective sentences thereto.

Conjointly, the Court finds that the West Virginia Legislature, in exercise of its constitutional authority, did statutorily declare the sentence to be imposed for this respective crime to be an indeterminative sentence in the penitentiary of not less than ten (10) nor more than twenty (20) years. Being as though the petitioner plead guilty to five counts of the aforesaid section of West Virginia Code, the Court, in accordance with its statutory authority as framed by our Legislature did sentence him to the statutorily proscribed indeterminative sentence of ten to twenty years on each count. Therefore, the Court finds, that because it imposed sentencing in accordance with the language of W.Va. Code § 61-8D-5(a) (2002), the sentence imposed for each of the five counts do not individually or collectively amount to cruel and unusual punishment. Likewise, as our progeny of case law illustrates, because the very nature of the punishment is defined in definitive and not indefinite terms, the statutory term of not less than ten nor more than twenty years is by its own terms, proportionate, as a matter of law. Therefore, the petitioner's claim must be denied as a matter of law.

The Court must also address the petitioner's contention that the Court subjected him to cruel and unusual punishment by running each of the five sentences imposed consecutively. In this respect, it has been long recognized that when a defendant receives multiple convictions, a trial judge in this State has wide discretion in deciding whether to impose concurrent or consecutive sentences. *See State v. Allen*, 208 W.Va. 144, 155, 539 S.E.2d 87, 98 (1999); Syl. pt. 3, *Keith v. Leverette*, 163 W.Va. 98, 254 S.E.2d 700 (1979) ("When a defendant has been convicted of two separate crimes, before sentence is pronounced for either, the trial court may, in its discretion, provided that the sentences run concurrently, and unless it does so provide, the

sentences will run consecutively."). Additionally, it has been recognized that "'consecutive sentences are an appropriate mechanism for imposing a distinct punishment for each of two criminal acts.'" *State v. Holcomb*, 178 W.Va. 455, 462, 360 S.E.2d 232, 239 (1987) (quoting *United States v. Lustig*, 555 F.2d 751, 753 (9th Cir. 1977)). The record reflects that at the time of sentencing, the Court took several factors into consideration as evidenced in part, by the following portion of the sentencing hearing transcript:

> COURT: Well, in regards to this case – This is also a horrendous case in regards to this matter; the – We have a child who is not only sexually abused by Mr. Contreras, we have children that were physically abused by Mr. Contreras.
>
> I would note that the report from the Charleston Psychiatric Group indicates that he suffers from pedophilia. He denies having sexually abused his daughter. The DNA testing indicates to the contrary.
>
> He has not accepted criminal responsibility.
>
> He did enter into a plea agreement to minimize his exposure, and I understand that, but his crimes against these children do not warrant anything but incarceration in the penitentiary.
>
> Further, I look to the – the age of this defendant. His is currently 39 years of age, and based upon his horrendous crimes, his denial, I believe the Court should impose consecutive sentencing.
>
> I'm not one who believes that a Court should impose outrageous sentences in terms of – of we know the individual will never serve those just for the – publicity of it all, but I believe that a Court should impose consecutive sentencing when it believes the crimes warrant and when it believes that children may be at risk, especially from a pedophile should they be released from custody.
>
> I certainly think that's the case here.
> \*\*\*\*
> (Sentencing Hearing Transcript pp. 8-9).

Based on statements at sentencing, the Court finds that it thoroughly examined the facts and circumstances of this case in determining to order the petitioner's incarceration. In addition, the Court further is of the opinion that the laws of this State clearly show that it did not abuse its discretion in running those sentences consecutively. The petitioner's convictions involved five separate occurrences wherein the petitioner committed the same horrendous and egregious acts against his stepdaughter, who was a minor; the petitioner failed to take criminal responsibility for

his actions; and his sex offender evaluation indicated he suffered from pedophilia. Therefore, the Court concludes it was well within its discretion to find that the substantial ends of justice and public safety required the petitioner serve his sentences in consecutive, not concurrent fashion. For these reasons, the Court hereby finds that its imposition of five consecutive sentences of ten to twenty years was not excessive, likewise, nor was the total effective sentence of not less than fifty nor more than one hundred years cruel and unusual punishment. Accordingly, the petitioner's claim in this respect is hereby denied.

### Ground Three: Involuntary Guilty Plea

The petitioner next contends that at the time of the plea hearing on March 12, 2008, he was under the influence of various controlled substances and therefore was "stoned" and "too doped up" to freely, knowingly and voluntarily enter his pleas of guilty. In addition to his alleged intoxication on the day of the plea, the petitioner further posits that he is just now working on his GED and thus was illiterate and lacked the requisite understanding and capacity to comprehend the nature and significance of the plea proceedings and therefore, his pleas of guilty in the underlying criminal case were involuntary and should be set aside. Having afforded a plenary review of the entire record, evidence adduced, and pertinent legal authorities, the Court concludes, as a matter of law, that the petitioner freely, voluntarily and knowingly entered his guilty pleas on March 12, 2008. Wherefore, the petitioner's claims for relief on this ground are denied. The reasons for this finding are set out more fully below.

It is a well understood principle of criminal practice that in some instances criminal cases are resolved without necessitating the need for a jury trial by the entry of a plea by the defendant. The present case reflects one of those instances. However, before a plea of guilty may be entered a court must ensure the defendant has been advised of his rights, as well as make specific inquiry

of the defendant in open court in order to ensure the guilty plea is both intelligent and voluntary. The West Virginia Supreme Court of Appeals adopted directive for trial courts in this respect in *Call v. McKenzie*, 159 W.Va. 191, 220 S.E.2d 665 (1975). Moreover, the nature and scope of the inquiry required in *McKenzie* is likewise parallel to the colloquy outlined in Rule 11(c) of the West Virginia Rules of Criminal Procedure. Both authorities require a court to address the defendant personally in open court and inform the defendant of, and determine that the defendant understands among other things, his constitutional and statutory rights, the terms and conditions of the plea agreement, as well as whether he is under the influence of or suffering withdrawal from drugs or alcohol. Again, the purpose of this inquiry is to aid the Court in a finding that a guilty plea was both intelligent and voluntary.

With respect to the present case, the record reflects that on March 12, 2008, the plea hearing was held before this Court where there appeared the petitioner with counsel, Brian Bailey and the State of West Virginia by and through Gerald Hough, her Prosecuting Attorney for Gilmer County. At which time the record reflects that the Court in accordance with *Call v. McKenzize* and Rule 11(c) of the West Virginia Rules of Criminal Procedure did engage the defendant in a lengthy inquiry regarding his rights and the petitioner indicated he understood those rights. Specifically, the Court finds the following colloquy with the petitioner, in addition to, those already referenced, *supra.* during the plea hearing relevant to the petitioner's current argument:

> COURT: Do you understand that once this Court accepts your guilty plea, that you don't have the right to withdraw your guilty plea unless you do so prior to sentencings and you can show the substantial ends of justice require that this Court permit you to withdraw your guilty plea? Do you understand that?
> DEFENDANT: (Nodded.) Yes.
> COURT: Do you understand that once this Court imposes sentence, even if this Court sentences you to the penitentiary of this State for not less than 10 no more than 20 years on each county –

DEFENDANT: Yes.

COURT: -- and runs them consecutively, which means that you could serve not less than 50 nor more than 100 years, the you don't have the right to withdraw your guilty plea? Do you understand that?

DEFENDANT: Yeah.

****

(Plea Hearing Transciprt p. 9-10).

COURT: You've discussed this plea agreement with your attorney; is that correct?

DEFENDANT: (Nodded.) Yes.

COURT: Have you discussed it with any family members?

DEFENDANT: (Shook head.) No.

COURT: Has anyone promised you probation?

DEFENDANT: (Shook head.) No.

COURT: Has anyone threatened you to cause you to enter this plea?

DEFENDANT: (Shook head.) No.

COURT: To your knowledge has anyone threatened you or any members of your family or promised any members of your family anything to cause you to enter this plea?

DEFENDANT: (Shook head.) No.

COURT: Were any threats or promises made to you in regards to the companion abuse and neglect case to cause you to enter this plea?

DEFENDANT: No.

COURT: Is your offer to enter this plea of your own free will?

DEFENDANT: Yeah.

COURT: Is it your own free and voluntary act?

DEFENDANT: Yeah.

COURT: Do you have any questions whatsoever about your proposed plea, your rights, or otherwise?

DEFENDANT: Yeah.

COURT: Do you have any questions?

DEFENDANT: (Shook head.) No.

COURT: Do you understand you're pleading guilty to five felonies, and you cann have in your possession or subject to your dominion or control any firearm for the resto of your natural life? Do you understand that?

DEFENDANT: Yeah.

COURT: Do you understand that a guilty plea is more than an admission of criminal conduct; it is a conviction; that there will not be any evidence introduced against you; there'll not be a jury trial of any kind, and all this Court has to do is accept your plea of guilty and you will stand convicted of the crimes which you are about to enter a plea of guilty? Do you understand that?

DEFENDANT: Yes.

COURT: Knowing all of this, do you still desire to enter a plea of guilty?

DEFENDANT: (Nodded.) Guilty.

****

(Plea Hearing Transcript pp. 27-29).

COURT: Have you understood all of my questions here today?
DEFENDANT: Yeah.
COURT: Have you understood all the matter I've explained to you here today?
DEFENDANT: Yeah.
COURT: Have all of your answers been truthful?
DEFENDANT: Yeah.
COURT: Do you have any questions about your guilty plea or any of the rights I've explained to you? Do you have any questions at all?
DEFENDANT: (Shook head.) No.
COURT: Do you freely and voluntarily tender your plea of guilty to this Court?
DEFENDANT: Yeah.
****
(Plea Hearing Transcript pp. 34-35).

COURT: The Court finds the defendant has knowingly and intelligently waived his constitutional rights....And that he has freely, voluntarily, and intelligently, knowingly, and understandingly tendered to this Court his oral plea of guilty to the five counts of Sexual Abuse by a Parent, Guardian or Custodian as contained in the indictment in this case.
****
(Plea Hearing Transcript p. 37).

The Court finds that based on its inquiry of the petitioner at the time of the plea, the Court extensively engaged in discussion with the petitioner wherein he was thoroughly advised of his rights and he stated on numerous occasions he understood those rights. The petitioner indicated that he was not under the influence or alcohol nor suffering from problems with withdrawal from the same. He indicated that while he may struggle to read and write that did not inhibit his ability to understand the scope and nature of the plea process and further acknowledged he had undergone a competency evaluation with Charleston Psychiatric Group and despite this literacy deficiency had been deemed competent to stand trial. Further, the petitioner stated that no threats or promises were made to him, his family members or friends that otherwise induced him to enter into the plea. He also stated that all his answers to the

Court's questions had been truthful and that he freely, voluntarily, knowingly and intelligently waived his rights and that entry of this plea was an act of his own free will.

Based on the evidence and the pertinent legal authority the Court herein finds and concludes that the petitioner voluntarily pled to the instant offenses and answered that he had no questions and that he understood all of his rights. That he stated he was not under the influence of, or suffering withdrawal from drugs or alcohol and that all of his answers were truthful. The Court also finds that the petitioner was afforded a competency evaluation that determined him competent to stand trial. The petitioner indicated his plea was of his own free will and volition. Moreover, the petitioner understood timeframe in which he could attempt to withdrawal his guilty plea; however, no such motion was filed. Therefore, the Court hereby concludes that petitioner's argument that his guilty pleas were involuntarily is meritless. The evidence wholly supports a conclusive finding that petitioner, having been duly advised of his rights did knowingly, voluntarily, freely and intelligently tender his pleas of guilty with this Court. Likewise, the petitioner's claim in this respect is denied as a matter of law.

### Ground Four: Trial Court Lacked Jurisdiction

The fourth assignment of error set forth by the petitioner is that the Circuit Court of Gilmer County, West Virginia lacked jurisdiction over his criminal case because the alleged acts occurred in the state of New York and not Gilmer County, West Virginia. Again, having afforded a thorough and plenary review of the record and pertinent legal authority, the Court, for the reasons discussed below, does hereby deny this ground for relief.

A proper analysis of this argument preliminarily requires an overview of two related but distinct and albeit often interchanged concepts of law: jurisdiction and venue. With respect to a criminal case, jurisdiction pertains to the inherent power within a court to decide a criminal case.

Venue, on the other hand, refers to the specific county, city, or municipality wherein a court with requisite jurisdiction may try a case. *State v. Dennis*, 216 W.Va. 331, 342, 607 S.E.2d 437, 448 (2004). It has also been stated that "[u]nder the Constitution and laws of this state, a crime can be prosecuted and punished only in the state and county where the alleged offense was committed." Syl. Pt. 2, *State v. McAllister*, 65 W.Va. 97, 63 S.E. 758 (1909). In the present case, the petitioner contends that West Virginia has no authority or constitutional power to prosecute or sentence him on the instant offenses because all of the elements of the offenses occurred in the state of New York. Because the petitioner is essentially challenging the jurisdiction of any West Virginia court to hear and decide the case he is raising a jurisdictional objection as opposed to a venue-based objection that would challenge which West Virginia court was proper. With this clarity on this principle now established, the Court will proceed to undertake the petitioner's argument at hand.

Of relevance to the Court's analysis is Rule 18 of the West Virginia Rules of Criminal Procedure, as well as Article III, section 14 of the West Virginia Constitution. Rule 18 appearing under the Venue section of the Rules of Criminal Procedure states, *[e]xcept as otherwise permitted by statute or by these rules, the prosecution shall be had in a county in which the offense was committed.* Article III, section of the West Virginia Constitution pertinently states, in part: *Trials of crimes and misdemeanors, unless herein otherwise provided, shall be by a jury of twelve men, public, without unreasonable delay, and in the county where the alleged offense was committed unless upon petition of the accused and for good cause shown, it is removed to some other county.* The very nature of this constitutional provision was early on in our state's history by the West Virginia Supreme Court in *Ex parte McNeely*, 36 W.Va. 84, 14 S.E. 436 (1892). In *McNeely*, a Logan County, West Virginia man was shot and killed in the river that forms the

West Virginia/Kentucky border. The shot was fired in Kentucky and the victim succumbed in West Virginia where the charges were subsequently brought. The murder convicted was appealed on the basis that statute related to the conviction violated Article III, section 14 of the West Virginia Constitution. The *McNeely* Court upheld the conviction and found that Article III, section 14 does not serve as a bar to this state enforcing such laws through its court system, even when some of the elements constituting the offense were committed in another state, as long as *some significant element* of the offense was committed within West Virginia.

Our state's highest tribunal recently addressed Article III, section 14 and the "continuing crimes" exception of *McNeely* in *State v. Dennis*, 216 W.Va. 331, 607 S.E.2d 437 (2004). Similarly to the petitioner in this case, *Dennis*, involved a defendant who challenged his convictions in West Virginia for sexual assault in the second degree and robbery based on the contention that the acts occurred in the state of Ohio and not West Virginia. The *Dennis* Court noted that a continuing offense is a crime considered as transitory, ongoing, or capable of repetition or continuation and as such is considered committed, and subject to prosecution, at any place where the crime was initiated, continued, or completed.[7] Ultimately that Court upheld the convictions and held that the offenses of sexual assault in the second degree and robbery may constitute continuing offenses for the purpose of criminal prosecution within the territorial jurisdiction of West Virginia. In order to be considered a continuing offense, the facts must demonstrate that at least one substantial or material element of the alleged sexual assault or robbery occurred within this state as part of a sequential chain of events. *Id* at Syl. pt. 3.

---

[7] The *Dennis* Court citing 4 Wayne R. LaFave, Jerold H. Israel & Nancy J. King, *Criminal Procedure* § 16.1(d) (2d. ed., West 1999).

In the present case, the petitioner stands convicted of five (5) counts of Sexual Abuse by a Parent, Guardian or Custodian in violation of West Virginia Code § 61-8D-5(a) (2002). That offense is defined by § 61-8D-5(a) (2002) as:

> In addition to any other offenses set forth in this code, the Legislature hereby declares a separate and distinct offense under this subsection, as follows: If any parent, guardian or custodian of a child under his or her care, custody or control, shall engage in or attempt to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact with, a child under his or her care, custody or control, notwithstanding the fact that the child may have willingly participated in such conduct, or the fact that the child may have consented to such conduct or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct, then such parent, guardian or custodian shall be guilty of a felony and, upon conviction thereof, shall be imprisoned in the penitentiary not less than ten nor more than twenty years, or fined not less than five hundred nor more than five thousand dollars and imprisoned in the penitentiary not less than ten years nor more than twenty years.

The Court is of the opinion that like the offense of sexual assault in *Dennis* the offense of sexual abuse by a parent, guardian or custodian in the present case is likewise an offense that by its very terms is capable of being a continuing offense. Namely, this instant offense is one that may be "transitory, ongoing, or capable of repetition or continuation and as such is considered committed, and subject to prosecution, at any place where the crime was initiated, continued, or completed." Therefore, the Court finds and concludes that the offense of Sexual Abuse by a Parent, Guardian or Custodian as committed in the present case constitutes a continuing offense under the laws of the State of West Virginia. In support of this finding, the Court points to the record of this case which shows that the petitioner pled guilty to committing these offenses of five occasions between July 2002 and November 2002 in Gilmer County, West Virginia. (See Plea Transcript pp. 11-14; 29-31). Therefore, regardless of whether the petitioner initiated these acts in the state of New York as he claims, the petitioner admitted to further committing those acts upon his stepdaughter who was subject to his care, custody and control in Gilmer County,

West Virginia, acts that were necessarily a continuation, repetition and/or completion of his initial offense. Furthermore, Mr. Bailey testified at the omnibus hearing that it was his understanding based on meetings with his client and the facts and circumstances of the criminal case that the abuse began while the petitioner and his stepdaughter were residing in New York and that said abuse continued upon relocation to Gilmer County, West Virginia. Based on those considerations, the Court finds that the state of West Virginia indeed had proper jurisdiction over the petitioner with respect to the subject offenses and further finds that venue was proper in the Circuit Court of Gilmer, County, West Virginia. Accordingly, having determined that both jurisdiction and venue were at all times proper, this assignment of error must also be denied.

### Ground Five: The Prosecutor Had a Conflict

The final assignment of error posited by the petitioner is that Gerald Hough, Prosecuting Attorney for Gilmer County, West Virginia should have been disqualified in the criminal case. As basis for this disqualification, the petitioner alleges that he had at one time rented from and performed odd jobs for Mr. Hough at his various rental properties. The Court, having reviewed the record in this case and pertinent legal authority finds that this assignment of error is outside the scope of habeas proceedings. Namely, the record reflects, *supra.* that the Court has previously found, petitioner knowingly, intelligently and voluntarily waived his constitution rights as such this matter is res judicata with respect to habeas corpus actions. In Syllabus Point 2 of *Call v. McKenzie*, the West Virginia Supreme Court of Appeals held that a criminal defendant can knowingly and intelligently waive his constitutional rights, and when such knowing and intelligent waiver is conclusively demonstrated on the record, the matter is res judicata in subsequent actions in habeas corpus.

In the present case, the record reflects that this conflict was never raised on the record, nor was a motion filed by the petitioner to have Mr. Hough recused from prosecuting the underlying case, nor does the record indicate any such filing was made in the companion abuse and neglect case. Moreover, as the Court has extensively noted in its findings throughout this opinion, the Court, at the time of the plea complied with Rule 11(c) of the West Virginia Rules of Criminal Procedure and the guidelines set forth in *Call v. McKenzie*. The petitioner was duly advised of his rights and conclusively made a knowingly, voluntarily and intelligent waiver of the same. Therefore, the Court finds that the petitioner, having failed to raise this alleged procedural defect below and knowing his rights and freely waiving the same, this claim must be denied as a matter of law.

Additionally, looking to the West Virginia Rules of Professional Conduct, namely Rule 1.7, the Court finds that there was no conflict of interest. The petitioner's basis for the conflict is based on a brief, isolated period where the petitioner was a tenant of Mr. Hough and assisted with odd jobs in and around his rental properties. Furthermore, it is uncontroverted this association with Mr. Hough had long since ended and that the association preceded both the criminal and abuse and neglect cases. There is no indication or evidence within the records in the underlying proceedings on in this instant petition that illustrate Mr. Hough possessed any knowledge of the petitioner's criminal conduct prior to the investigation by law enforcement and filing of charges. Simply put, the complained of association and the later criminal charges were clearly separate, unrelated, and distinct events that had no correlation with each other. Moreover, the petitioner was never a client of Mr. Hough and therefore, it cannot be shown that his representation of the State of West Virginia as Prosecuting Attorney for Gilmer County was in any way adverse to the interests of the petitioner nor was he prejudiced in any manner.

Wherefore, the Court accordingly finds that the limited association articulated by the petitioner did not give rise to a conflict of interest which should have warranted the disqualification or recusal of Mr. Hough in the aforesaid criminal proceedings. It is for those reasons that this claim must also be denied as a matter of law.

## CONCLUSION

Based on the foregoing, it is accordingly **ADJUDGED** and **ORDERED** that the petitioner's request for writ of habeas corpus is hereby **DENIED**. This case is **DISMISSED** and **STRICKEN** from the active docket of this Court.

The parties' objections and exceptions are noted by the Court.

The Clerk shall send certified copies of this Order to counsel for the parties, forthwith.

**ENTERED** this ___16___ day of December, 2015.

JACK ALSOP, JUDGE